(73 South. 263)

No. 20740.

Succession of ZELLER.

(May 9, 1916. On Rehearing, Dec. 11, 1916.)

*(Syllabus by the Court.)*

DESCENT AND DISTRIBUTION ☞122—SUCCESSION—PAYMENT OF DEBTS.

The provision of the Mississippi Code that a testamentary disposition or bequest of property to a religious institution shall be null and void, and that the heir at law shall take the property so bequeathed or devised as though no testamentary disposition had been made, does not purport to embody all of the law of that state regulating the distribution of estates of deceased persons, and it cannot reasonably be construed to mean that the heir at law shall take the property (illegally bequeathed to a religious institution) unconditionally and without regard to the debts of the succession or to the general laws regulat-

ing the distribution of estates of deceased persons.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 445–456; Dec. Dig. ☞122.]

Monroe, C. J., dissenting on rehearing.

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

In the matter of the succession of Mrs. Caroline Woolfarth Schenkel Zeller. From a judgment homologating the account of the executor, appeal is taken. Reversed and remanded.

A. D. Preston, of Beckley, W. Va., for appellant Koy. Buck, Walshe & Buck, of New Orleans, for appellee Commercial Germania Trust & Saving Bank. R. G. Pleasant, Atty. Gen., and Harry Gamble, Asst. Atty. Gen., for Board of Administrators of Charity Hospital, in opposition.

PROVOSTY, J. The testatrix left two wills, one disposing of her property in Switzerland, and the other of her property in the United States. The latter will gave to religious and charitable uses real estate situated in the state of Mississippi. A statute of that state declares that any such bequest "shall be null and void, and the heir at law shall take the property so devised as though no testamentary disposition had been made." Code 1906, § 5090. The heir at law, Mrs. Ellen S. Koy, claims under this statute. The Charity Hospital of New Orleans is residuary legatee under the will. It contends that by a correct interpretation of said statute the said lapsed legacy falls back into the general estate, and passes with it to the residuary legatee.

We are not advised what interpretation has been placed upon this statute by the courts of Mississippi. Does the expression "as though no testamentary disposition had been made" have reference to the entire will, or only to the reprobated disposition. In the one case the heir at law would take; in the

other the property would pass to the residuary legatee by operation of the will. We shall accept the statute as it is written, and hold that no testamentary disposition means none at all; that the heir takes as if no will at all had been made.

The decedent resided and died in New Orleans; and her succession was opened and the said wills probated here. In order to avoid the expense of subsidiary succession proceedings in the state of Mississippi, an agreement was entered into between the testamentary executor and the heir at law for selling the said Mississippi property at private sale. This was done under a power of attorney given by the heir at law, and the price of the sale went into the hands of the testamentary executor. By an express clause of this agreement the rights of the heir at law were not to be prejudicially affected by this arrangement. This express agreement controls, as a matter of course; and even in its absence the mere consent that the property be sold at private sale instead of in the course of regular succession proceedings could not have affected the rights of the heir at law, and she therefore continued to be entitled to receive the price of the sale of this property; this price merely standing in the place of the property itself.

The only debt left by the decedent consisted of $10, plus funeral expenses amounting to $147, and a drug store bill of $2.90. Her succession, exclusive of the Switzerland and Mississippi properties, amounted to $5,351.65. The proceeds of the Mississippi property amounted to $1,027.14. The executor in his account treated these proceeds as ordinary assets of the succession; in other words, attributed same to the payment of the legacies and debts. There was left a balance of $128.76. This balance his account gives to the heir at law, Mrs. Koy. And the account contains the statement that some money, amounting probably to $400, will be received from Switzerland, and that this amount also will have to go to the heir at law. Due notice of the filing of the account was published; but no notice or citation was served on the attorney appointed to represent absent heirs. And Mrs. Koy, the heir at law, who lived in Texas, was not cited, but a copy of the account was mailed to her by the executor, and she was advised by letter that, if she had any objections to make to its being approved by the court, she would have to file an opposition in court within ten days. She wrote in answer that she was entitled to the entire proceeds of the Mississippi property, less its pro rata share of the debts. The Charity Hospital of New Orleans filed an opposition claiming, as residuary legatee, the balance of $128.76, and also the $400, or whatever the amount might be, to come from Switzerland. The court homologated the account in so far as not opposed; and the executor paid the debts and the legacies, retaining only the balance of $128.76. Thereafter Mrs. Koy, the heir at law, filed an opposition, claiming the proceeds of the Mississippi property, and also the amount to come from Switzerland. The court sustained her opposition in so far as the amount to come from Switzerland was concerned, but otherwise rejected it. It sustained the claim of the Charity Hospital to the $128.76, but otherwise overruled its opposition. Since then the amount to come from Switzerland has been received, and has proved to be $500.

We do not understand the executor as contending that Mrs. Koy is bound by the judgment by which the account was homologated in so far as not opposed; or, in other words, that her opposition was filed too late. If such contention were made, it would be without merit, as the said judgment was rendered without citation either of her or of the attorney for absent heirs. Miguez v. Delcambre, 109 La. 1094, 34 South. 99; Mullen v. King, 10 La. Ann. 674.

We have already shown that the proceeds of the Mississippi property, consisting of the price of sale and rents, must go to the heir at law as if the succession were intestate.

And the amount received from Switzerland must go to her in like manner, subject only to its bearing, like the Mississippi property, its pro rata share towards the payment of the debts. No part of it can go towards the payment of the legacies, for the legacies are expressly made payable only out of the property situated in the United States. The will reads:

"This is my last will and testament with reference to any property I may own in the United States. Out of whatever I now or may hereafter possess in the United States I give and bequeath, as follows."

Then follow the legacies. This $500 came into the United States after the death of the decedent, and was therefore never owned by her in the United States; and, as a consequence, the legacies are not payable out of it.

The account will therefore have to be recast so as to make the several funds, namely, the proceeds of the Mississippi property, the $500 received from Switzerland, and the proceeds of the Louisiana property, contribute pro rata towards the payment of the debts of the succession, including in the debts all the costs of administration, except those, if any, incident to the sale of the Louisiana property, and giving to the heir at law the remainder of the said funds after deduction of said pro rata.

Mrs. Koy was one of the legatees under the will, and, like all the other legatees, was paid the amount of her legacy in full. When the account is recast in accordance with the views expressed in this opinion, there will not be enough to pay the debts and special legacies in full. Mrs. Koy has therefore been paid as a legatee more than she was entitled to. The surplus amount thus overpaid to her will therefore have to be deducted from the amount coming to her under the new statement of the account.

The judgment homologating the account is therefore set aside, and the case is remanded to be proceeded with according to law, and in accordance with the views expressed in this opinion, the costs of the appeal to be paid by the Charity Hospital, and all other costs to be paid by the succession.

O'NIELL, J., dissents. SOMMERVILLE, J., takes no part.

On Rehearing.

O'NIELL, J. The learned counsel in this case are unable to cite a case, and we are unable to find one, in which the Supreme Court of Mississippi has construed section 5090 of the Code of that state. The statute declares that a bequest or legacy in favor of a religious or ecclesiastical institution, for its own benefit or for charitable uses or purposes, shall be null and void, and that the heir at law shall take the property so devised or bequeathed as though no testamentary disposition had been made.

It so happens that the residuary legatee in this case is precluded from taking the proceeds of the sale of the Biloxi property by the interpretation given to the statute of Mississippi by the parties to this litigation. Hence we are not required to decide whether the Mississippi statute should be construed so strictly and literally as to permit the heir at law to take the legacy or proceeds of the sale of the property in Biloxi, Miss., to the exclusion of the residuary legatee.

It is suggested in the brief filed by the executor, in support of the application for rehearing, that the Charity Hospital in New Orleans is not precluded by the statute of Mississippi from receiving, as the residuary legatee, the proceeds of the sale of the property in Biloxi, because the Mississippi statute does not expressly declare null a bequest

made directly to a charitable institution, but only declares null a bequest made to a religious or ecclesiastical institution, whether for its benefit or for charitable uses or purposes. We cannot now adopt that construction of the statute of Mississippi, since the executor and the heir at law have taken the position that the bequest to the Charity Hospital in Biloxi was null and void, and have sold the property, and the executor has the proceeds for distribution. The testamentary disposition with respect to the property in Biloxi is in these words:

"I wish it sold and the proceeds equally divided between the Charity Hospital of Biloxi and the Lutherisher Verein of Biloxi, for the purpose of building a church, but, should this Lutherisher Verein no longer exist, then I give all to the Charity Hospital of Biloxi, Mississippi."

Then immediately follows the residuary bequest, viz.:

"All else I die possessed of in the United States I give and bequeath unto the Charity Hospital of New Orleans, La."

If article 5090 of the Mississippi Code does not declare null as to the property in Biloxi, Miss., the residuary bequest to the Charity Hospital in New Orleans, the particular legacy of that property to the Charity Hospital in Biloxi was not null; and, in that event, neither would the Charity Hospital in New Orleans nor the heir at law take the proceeds of the sale of the Biloxi property. Since the executor and the heir at law have taken the position that the bequest of the property in Biloxi to the Charity Hospital in that city is null and void, and since the Charity Hospital in New Orleans, as residuary legatee, has no interest in contesting that interpretation of the statute, we are not called upon to question its correctness. Our opinion is that the Charity Hospital in New Orleans, as residuary legatee, cannot take the proceeds of the sale of the Biloxi property, under the interpretation put upon the statute of Mississippi by the parties to this controversy, but that the money derived from the sale of the Biloxi property belongs to the succession of the testatrix, to the extent that it must pay its proportion of the debts of the succession.

It appears that, after paying all of the special legacies, the executor has on hand $1,792.08. Of this sum $948.50 is the amount of the proceeds of the sale of the Biloxi property which the residuary legatee cannot take. The balance of $843.58 should go to the residuary legatee after the debts are paid. The debts of the succession amount to $1,153.03. If the proceeds of the sale of the Biloxi property be applied first to the payment of the debts, the heir at law will take nothing; and, if the residuum of $843.58, to which the residuary legatee is entitled, be applied first to the payment of the debts of the succession, the residuary legatee will take nothing. Our opinion is that the debts should be paid out of the two funds in the proportion which they bear to one another; that is, that the proceeds of the sale of the Biloxi property should contribute 53 per cent., or $611.11, and that the fund of $843.58 should contribute 47 per cent., that is, $541.92, to the payment of the debts of the succession. Accordingly, the heir at law should receive $337.39, and the residuary legatee $301.66.

It is suggested in a supplemental brief on behalf of the executor that the opposition of Mrs. Koy, the heir at law, was filed too late to avail her, being filed after the account was homologated, in so far as it was not opposed. No such objection was made to the trial, nor on the trial, of Mrs. Koy's opposition. On the contrary, it was said in the executor's original brief filed in this court:

"Mrs. Koy, through her attorney, complains that the judgment of homologation was not binding upon her, because, as an heir, she was entitled to a notice and citation, etc. The contention is now a vain one, because her case was fully heard on her opposition; no exception that it came too late was made or insisted upon. Her complaint was heard and fully tried, and if this court finds that she is entitled to what she

claims, there is no technical defense made at this time to delay such an adjustment."

Under these circumstances we will not now consider the contention that the claim made by the heir at law was foreclosed by the judgment homologating the account in so far as it had not been opposed when the judgment was rendered.

As there may be additional charges to be accounted for, since the account was rendered, we will not now render judgment amending the account and homologating it as amended, but will remand the case for a settlement of the succession according to the views expressed in this opinion.

For the reasons assigned, the judgment homologating the account of the executor is annulled and set aside, and it is now ordered that this case be remanded to the civil district court to be proceeded with according to the views herein expressed. The costs of this appeal are to be paid from the funds in the hands of the executor, and apportioned as stated above.

MONROE, C. J., dissents.